JULY TERM, 1882, Nos. 140, 141.          JANUARY 17, 1883.

## James, *administrator, et al. v.* Milne.

## Same *v.* Same.

1. The principles decided in an appeal from the distribution of a decedent's estate by the Orphans' Court, apply with equal force to attachment executions issued from the Court of Common Pleas by the appellants against the distributee's interest in the said distribution.

2. The Orphans' Court has power to revise and correct its former adjudications, if in those adjudications it discover a palpable mistake, produced either by its own inadvertence or by the blunder of the parties.

3. The indebtedness of a distributee to the decedent, incurred more than six years before the death of the latter, cannot be set off against the distributee's share of the estate.

4. The statute of limitations begins to run, on a due bill payable on demand, from its date, and no demand is necessary before suit brought.

5. The running of the statute of limitations is not suspended by the probate of the claim in proceedings in bankruptcy against the debtor.

6. The act of Congress of 23d June, 1874, under which the creditor could be restored to his former situation in case a discharge was refused or the proceedings in bankruptcy were determined without a discharge, does not apply where a claim has been proved and there has been neither a discharge nor any other determination of the proceedings.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas, No. 2, of *Philadelphia County.*

Case by Francis F. Milne against William A. James, administrator of the estate of Archimedes J. Bucknor, deceased, and garnishee of A. J. Bucknor, junior, who was sued with David C. McCammon and W. Henry Nassau, late trading as Bucknor, McCammon & Co.  Plea, *nulla bona.*

In the court below, F. F. Milne brought two actions against A. J. Bucknor, junior, and others composing the firm of Bucknor, McCammon & Co., in which he recovered judgments, one on April 22, 1876, revived March 19, 1878, for $5,635 20, and the other on May 11, 1872, revived March 19, 1878, for $5,921 55.

[James, Administrator, *et al. v.* Milne.]

On January 24, 1878, attachments *sur* judgments were issued in both cases against W. A. James, administrator of the estate of A. J. Bucknor, deceased, garnishee, who was the father of A. J. Bucknor, junior, and who died December 13, 1877, intestate, leaving a widow and six children, including the said A. J. Bucknor, junior, who died in November, 1878. The administrator filed two accounts, one on September 30, 1878, and one on February 28, 1879. The adjudications under these accounts did not pass upon any questions of set-off or deductions, but simply ordered that the share of A. J. Bucknor, junior, should be retained by the accountant until the final determination of the above attachments. Subsequently, upon petition, the Court opened the adjudications and recommitted the accounts to the auditing judge, HANNA, P. J., before whom it was shown, by the production of the record and proceedings in bankruptcy against Bucknor, McCammon & Co., that A. J. Bucknor, junior, was, at the date of the death of his father, indebted to his father in the sum of $13,203 39, upon a due bill for $10,000, dated January 1, 1867, payable on demand; in the sum of $3,395 46 upon a note of Bucknor, McCammon & Co., due October 5, 1870, and in the sum of $9,807 93 upon an account for money loaned, due September 12, 1870; that a dividend of $382 58 had been paid thereon, and that no discharge had yet been granted. The auditing judge was of opinion " that while in a suit upon said due bill by the accountant against A. J. Bucknor, junior, or his legal representatives, the plea of the statute of limitations must be sustained in the absence of evidence of a promise to pay, etc., yet it is not applicable to a suit by a legatee or a distributee to recover a legacy or distributive share, for in such event it is well settled that the executor or administrator may retain the legacy or share in part or full satisfaction of the debt," and accordingly held that A. J. Bucknor, junior, was indebted to his father's estate in the sum of $39,579 65; that his distributive share in said estate amounted to $14,-767 78, and that as neither he nor his estate would be entitled to share in the fund for distribution, his distributive share, being in part payment of his indebtedness to the estate, should be divided among the widow and children of A. J. Bucknor, senior. Under the second account the distributive share of $2,361 92 was divided and awarded to the widow and children in the same manner.

To these adjudications Milne filed exceptions, which were dismissed.

He then appealed to the Supreme Court, and on Feb-

[James, Administrator, *et al. v.* Milne.]

ruary 20, 1882, the decree of the Orphans' Court was reversed, GORDON, J., delivering the following opinion .

"The appellant, Francis F. Milne, is a creditor of A. J. Bucknor, junior, and on the 21st of January, 1878, levied two writs of attachment on the distributive shares of the debtor in the hands of William A. James, administrator of the estate of A. J. Bucknor, senior, and it is thus that Milne becomes interested in the distribution of this estate and in the decree made by the Court below. On settlements of the accounts of the administrator, the last one audited January 21, 1879, the distributive shares of the younger Bucknor were found to be $17,129 72 and so adjudged. At the time of the death of A. J. Bucknor, senior, which occurred December 13, 1877, he held two several claims against his son : one a due bill, payable on demand, for $10,000, dated January 1, 1867 ; the other a claim against the firm of Bucknor, McCammon & Co. made up of a note for $3,395 46, due October 5, 1870, and an account for money loaned in the sum of $9,807 93, due September 12 of the same year. This firm went into bankruptcy October 14, 1870, from which, as yet, there has been no discharge, and the claim above stated was, among others, duly proved. On the settlements in the Orphans' Court, through some inadvertence or mistake, the effect of these claims, as off-sets to the distributive shares of the younger Bucknor, was not passed upon, and on a petition of the administrator, dated June 21, 1879, setting forth this mistake which is not denied, the Court opened its former decree and proceeded to a re-adjudication. To both the above-mentioned claims against A. J. Bucknor, junior, the appellant interposed the plea of the Statute of Limitations, which was over-ruled by the Orphans' Court, and the set-off as claimed by the administrator was allowed. We have, therefore, two principal questions presented for our consideration : the power of the Orphans' Court to open and correct its decree, and the effect of the Statute of Limitations upon the claims of the estate against A. J. Bucknor, junior.

As to the first question, we answer it by saying that we have no doubt about the power of the Orphans' Court to revise and correct its former adjudications, if in those adjudications it discovered a palpable mistake, produced either by its own inadvertence or by the blunder of the parties. A sense of fair dealing and justice would be authority enough, in the absence of any other, for so holding ; nevertheless, other authority will be found, and that directly in point, in George's Appeal, 2 Jones, 260,

[James, Administrator, *et al. v.* Milne.]

where the subject is so fully discussed that further argument from us is unnecessary.

This out of the way, next in order comes the question involving the Statute of Limitations. If this statute is operative under the circumstances of this case, then both the claims above referred to are barred thereby, and the appellant is entitled to a reversal of the decree of the Court below. But, as we have seen, if it is not operative, it is not for the want of time, for the due bill as well as the claims against Bucknor, McCammon & Co. were more than six years old at the time of the death of the elder Bucknor.

But it is urged that the statute does not apply to a distribution in the Orphans' Court where there is an exercise of the right to retain from a distributee's share his indebtedness to the estate. To support a doctrine such as this, nothing has been produced from our own books, but the dictum of Mr. Justice Read in Thompson Ap., 6 Wright, 346, and that is based solely on English authorities. On the other hand, the contrary was held in the recent case of Reed *v.* Marshall, 9 Norris, 345, where, on a suit for a legacy, an attempt was made to set-off a claim of the estate against the legatee which had been barred by the statute prior to the death of the deceased.

Nor is the attempted distinction between equitable and common law proceedings, as respects the Statute of Limitations, well founded. As was said in Hoch's Ap., 9 Harris, 280, a case where the Orphans' Court, on objection of a legatee, refused to allow an executor to retain a debt due himself which was barred by the statute in the life of the testator, a court of equity will not pass upon a claim bad at law. Neither has the argument for a contrary doctrine a sound premise. It is urged that the statute does not pay the debt; that it only operates on the remedy. It is true that the statute operates only upon the remedy, or action for the collection of the debt; but it thus operates because of the presumption that the claim has been paid or otherwise extinguished, if its collection has not been insisted on within six years, and that, therefore, it would be inequitable after that time, to compel its payment: Hanger *v.* Abbott, 6 Wallace, 538.

Again the Court below thought that as the ten-thousand-dollar claim was a due bill, payable on demand, the statute did not commence to run from its date, but only after demand made. This was a mistake. Taylor *v.* Witman, 3 Grant, 138, holds that the statute begins to run, on a note payable on demand, from its date, and that no

demand is necessary before suit brought. The cases of the Girard Bank *v.* the Penn Township Bank, 3 Wright, 92, and Finkbone's Appeal, 5 Norris, 368, are not in point. Those were suits for the recovery of deposits, and the contracts were in the nature of bailments for safe-keeping; moreover, in the case last named, it was expressly said that the obligation sued upon was not in the nature of a due bill, but that it had rather the character of a deposit.

As to the claim against Bucknor, McCammon & Co., we cannot agree with the Court below that the running of the statute was suspended by the operation of the United States bankrupt act. The probate of the claim under that act is like the prosecution of any other suit; if it is successful, all is well, and the account is secured; but if not, if the creditor is in the end obliged to resort to a new process in the State Courts for the recovery of his debt, we cannot see upon what principle, in order to avoid the running of the Statute of Limitations, he can count out the time consumed by his first abortive attempt. He is not compelled to prove his claim; but if he does, it is a voluntary surrender of it, and in this it is altogether unlike those cases where a condition of war, as in Hanger *v.* Abbott, *supra*, or public policy, as in Hutchinson *v.* the Bank, 5 Wright, 42, leaves the creditor without remedy. But under such circumstances, his will is not consulted; the courts are closed against him. Hence, of necessity, the running of the statute is suspended until the public emergency has passed, and he is again clothed with power of asserting his rights. In the case now being considered, Bucknor had two methods of redress presented for his consideration and acceptance. He might prove his claim in the bankrupt court, or he might sue in the State court. If he adopted the first method, he voluntarily abandoned all other remedies, and made an absolute surrender of his claim; and it is only by virtue of the act of Congress of June 23, 1874, that he could be restored to his former condition, in case a discharge was refused to the bankrupt, or the proceedings were determined without a discharge.

Now Bucknor's claim against the firm of which his son was a member was proved some seven years before his death, and had there been no unwonted delay, a discharge would have been had long before the date of his decease. But, in that event, the indebtedness now sought to be used as an off-set would have been fully canceled, and the use of it, as now intended, against the after-acquired

[James, Administrator, *et al. v.* Milne.]

estate of the younger Bucknor, would have been out of the question. But, as yet, there has been no discharge, neither have the proceedings in bankruptcy been determined without a discharge ; hence, the act of 1874 does not apply to the claim in controversy, and it may be that it never will so apply.

How, then, can this surrendered claim be interposed as a set-off, or must the distribution await indefinitely for the happening of a contingency, now rendered exceedingly remote by the death of both the principal parties ? We think it will not subserve the purposes of either law or equity thus to suspend the running of the statute on the mere expectation of an event that may never come to pass. If, however, the second method were adopted, the bar of the statute would be effectually prevented, and the creditor might prosecute his claim to judgment, subject only to such delays as might result from the interposition of the court having jurisdiction of the proceedings in bankruptcy.

We conclude, then, that the delay in this case having arisen from no legal or political necessity, but from the voluntary act of the creditor, the bar of the statute is effective to defeat the appellee's claim.

The decree of the Court below is now reversed and set aside, and the former adjudications restored and affirmed at the cost of the appellee."

On October 18, 1880, these attachment suits were tried, and the garnishee's attorney requested the Court to charge as follows :

*First.* That the claims of the estate of A. J. Bucknor, senior, against A. J. Bucknor, junior, individually, and as a member of the firm of Bucknor, McCammon & Co., are not barred by the Statute of Limitations ; that the running of the statute was tolled by the proceedings in bankruptcy, and that the administrator of A. J. Bucknor, senior, may set off these claims against the distributive share of A. J. Bucknor, junior, in the estate of A. J. Bucknor, senior.

*Second.* That this Court has not jurisdiction of this suit, exclusive jurisdiction being vested in the Orphans' Court.

*Third.* That the proceedings in bankruptcy have barred this action by the plaintiff, and he cannot recover.

It was thereupon agreed, by the counsel of both parties, that if the Court in banc should be in favor of the garnishee on the above points, or any of them, then judg-

[James, Administrator, *et al. v.* Milne.]

ment is to be entered in his favor, otherwise for the plaintiff on the verdict.

October 18, 1880.    Verdicts for plaintiffs $6,839 40 and $6,558 33, and the jury find sufficient in the hands of garnishee belonging to defendant to pay the judgments. On June 10, 1882, judgment was entered for the plaintiff upon the verdict.

The defendants then took out a writ of error, assigning as error the refusal to affirm the above points and the entry of judgment for plaintiff upon the verdicts.

*S. G. Thompson* for plaintiff in error.

The Statute of Limitations does not apply, because the debt is not destroyed, but the right of action merely is lost, and the right of the creditor to retain the debts follows : Thompson's Appeal, 6 Wr., 345. In Milne's Appeal, this is treated as a *dictum*, but the *dictum* in Read *v.* Marshall is adopted : Wesner *v.* Stein, 38 Leg. Int., 459. Proceedings in bankruptcy are in the nature of a suit, and have the effect of a promise to pay all creditors : Blumenstiel on Bankr., 240 ; Ramsay *v.* Warner, 97 Mass., 8 ; Pond *v.* Williams, 1 Gray, 630 ; Wharton on Contr., 933.

The bankruptcy proceedings operate to suspend the Statute of Limitations : Dingee *v.* Becker, 9 Phila., 196. The creditor proving his claim cannot sue until a discharge is refused or when proceedings are determined. Therefore, the statute does not begin to run until after the right to sue arises : Heath *v.* Page, 12 Wr., 142.

The exclusive jurisdiction is vested in the Orphans' Court : Bank *v.* Ralston, 7 Barr, 485 ; Springer's Appeal, 5 Casey, 208 ; Hughes' Appeal, 7 P. F. Sm., 181 ; Ashford *v.* Ewing, 1 Casey, 213 ; Ins. Co. *v.* Wilson, 7 P. F. Sm., 182 ; Springer's Appeal, 5 Casey, 208.

*E. H. Hanson* for defendant in error.

The questions raised here are *res adjudicata*, having been decided by this Court on the appeal from the decree of the Orphans' Court : Milne's Appeal, 11 W. N. C , 330.    The Supreme Court will not reverse their own decision in the same case and upon the same facts : Dushane *v.* Bank, 39 L. I., 280.    A former judgment between the same parties is conclusive : Rockwell *v.* Langley, 19 Penna., 502 ; Philadelphia *v.* Girard's heirs, 45 Penna., 9, and cannot be collaterally questioned : Bower *v.* Tallman, 5 W. & S., 556 ; Peterson *v.* Lothrop, 34 Penna., 223.

[Massey *et al. v.* Clarke.]

JANUARY 29, 1883.—PER CURIAM: These two cases present the same question. They were argued together. We think the principle decided in Milne's Appeal, 11 W. N., 330, rules the cases against the plaintiff in error. While that case was in the Orphans' Court, yet the reason on which it rests applies with equal force to the present cases. Judgment was, therefore, correctly entered in favor of the defendant in error in each case on the reserved question.

Judgment in each case affirmed.